IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Monterey Bay Homes, LLC, | ) | Civil Action No.: 4:12-cv-00891-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Robert Chambers, Rene Chambers, | ) | |
| Palmetto Design Group, LLC and | ) | |
| Wall Tec, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Monterey Bay Homes, LLC ("MBH") filed this action against the above-captioned Defendants, alleging a single count of copyright infringement against each Defendant.[1]  Defendant Wall Tech, LLC filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Wall Tec, LLC's Mot. for Summ. J., ECF No. 64.  Subsequently, Defendants Robert Chambers and Rene Chambers ("the Chambers") jointly filed their own motion for summary judgment, as well as a motion to exclude parts of the testimony of MBH's expert witness. ECF Nos. 66, 67.  MBH also filed a motion to exclude Wall Tec's expert witness. MBH's Mot. to Exclude, ECF No. 65.  These four motions are now before the Court.  The parties appeared before the Court for a February 18, 2014 hearing, and the motions were taken under advisement.  After reviewing the parties' motions and briefs, and considering the parties' arguments and supporting evidence, the Court denies the Defendants' motions for summary judgment, grants the Chambers motion to exclude, and grants in part and denies in part MBH's motion to exclude.

---

[1] Defendant Palmetto Design Group, LLC failed to appear, and accordingly, the Clerk of Court has issued an entry of default. ECF No. 41.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

MBH, a North Carolina construction company, filed this copyright infringement action on March 29, 2012. Compl., ECF No. 1. It subsequently filed an amended complaint on April 18, 2012, asserting one cause of action—"Federal Copyright Infringement"—against the Chambers, Wall Tec, and Palmetto Design Group, LLC ("Palmetto"). *See* Am. Compl. ¶¶ 34–41, ECF No. 7. The amended complaint alleges that the Chambers copied several architectural designs created and registered by Arthur Rutenberg Homes, Inc. ("ARH"). MBH, an ARH franchisee, claims to own the exclusive right to use the designs in Horry County, South Carolina, and, accordingly, to enforce the copyrights. The specific, copyrighted ARH designs that MBH argues were infringed were the "Anastasia 1117," "Bardmoor II," and "Waterford 1078" plans.[2] *Id.* at ¶¶ 5–6.

In the interest of brevity, the Court will save a more-detailed discussion of the relevant facts for when each motion is considered below. However, by way of background, suffice it to say that it is undisputed that the Chambers retained Palmetto to draft architectural plans for the construction of their Mediterranean-style home in the Myrtle Beach, South Carolina area. Moreover, it is undisputed that Wall Tec, a local construction company, was hired to build the Chambers' home using the plans drafted by Palmetto. Prior to the retention of Palmetto, the Chambers had shown interest in several ARH designs and had been in discussions with MBH about building one. MBH claims that the Chambers soon began shopping for an architect and builder who would ultimately assist the Chambers in copying and using the ARH copyrighted plans. MBH continued to provide the Chambers with plans to consider while Palmetto drafted its design. MBH even provided an estimate to build the Chambers' home using the Palmetto plan; however, it was Wall Tec that

---

[2] An "architectural work" is protected by the Copyright Act and defined as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." 17 U.S.C. § 101.

provided the Chambers with the less-costly construction and that received the contract build the home.  The Chambers' home was eventually built, and this action resulted.  Now before the Court are Wall Tec's and the Chambers' motions for summary judgment, filed on July 11, 2013, and July 13, 2013, respectfully.  Furthermore, the Court is asked to decide the admissibility of the testimony of MBH's and Wall Tec's expert witnesses.  Because the Defendants' motions for summary judgment raise many of the same issues, the Court shall address them first and together.

## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

The Chambers raise two bases for summary judgment in their motion.  They contend that MBH has neither the authority to bring this action nor presented a prima facie case of copyright infringement. Chambers' Memo. in Supp. of Mot. for Summ. J., ECF No. 66-1.  Wall Tec raises similar arguments (albeit, more generally); however, it also argues that summary judgment should be granted in its favor because MBH presents no evidence that Wall Tec knew or should have known that the Palmetto plans were copies of the ARH designs. Wall Tec's Memo. in Supp. of Mot. for Summ. J. 4–5, ECF No. 64-1.

Specifically, the Chambers first argue that MBH does not have an exclusive right to the copyrights and thus lacks standing to enforce the copyrights giving rise to this action. Chambers' Memo. in Supp. of Mot. for Summ. J. 4–6.  They point out that "the Franchise Agreement [between ARH and MBH] states that ARH allows other franchisees the right to use the copyrighted material as well." *Id.* at 5.  They characterize MBH's right to use the copyrighted plans as a "limited authority" and argue that ARH has not assigned any enforcement rights to MBH. *Id.*  Second, the Chambers argue that MBH has failed to make a prima facie case that Defendants copied the ARH plans. *Id.* at 6.  In particular, the Chambers contend that the plans are not substantially similar and that there is no evidence that they had access to the ARH plans that were allegedly copied. *Id.* at 6–

3

9.  Wall Tec's motion for summary judgment generally raises these arguments as well.  In arguing, however, that MBH has failed to make a prima facie case, Wall Tec argues more specifically that "[MBH] has provided no evidence to support its claim that Wall Tec . . . had reason to doubt that the plans presented to it was anything but original work." Wall Tec's Memo. in Supp. of Mot. for Summ. J. 4.  Wall Tec also claims that there is no evidence that it violated any standard of care in its use of the plans.  *Id.* at 5.  The Court shall refer to this argument as the "innocent builder defense."

In response to these arguments, MBH contends that "the holder of an exclusive licensee of a copyright for a limited geographic area is an owner within the meaning of the [Copyright] Act." MBH's Memo. in Opp. to Chambers' Mot. for Summ. J. 5, ECF No. 74.  Additionally, MBH notes that the fact that MBH's right is limited to Horry County does not defeat its ability to enforce the copyright in that territory. *Id.* at 6.  As such, MBH argues that a genuine issue of fact exists as to whether MBH is an exclusive licensee of ARH's plans. *Id.* at 7.  Second, MBH argues that sufficient evidence exists to suggest that the Chambers had access to the ARH plans at issue and that the plans are substantially similar. *Id.* at 7–13.  In response to Wall Tec's argument that Wall Tec was an innocent builder, MBH contends that a plaintiff does not have to prove that the infringement was intentional in order to prevail against a defendant in a copyright infringement action. MBH's Memo. in Opp. to Wall Tec's Mot. for Summ. J. 4, ECF No. 69.  MBH thus asserts that Wall Tec's innocent builder defense is based on an incorrect reading of the law and that a builder's standard of care is irrelevant. *Id.* at 5.  The Court addresses each of these arguments in turn, beginning with the arguments relevant to both motions.

## I.    Summary Judgment Standard

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine dispute for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine dispute as to any material fact and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257.  In determining whether a genuine dispute has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand a summary judgment motion. *Id*. at 252.  Likewise, conclusory allegations

or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'n Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## II.    *Standing*

The Chambers' and Wall Tec contend that Plaintiff does not have standing to enforce the copyrights at issue. Specifically, they argue that the franchise agreement between ARH and MBH does not provide MBH with an exclusive license to use the three designs MBH claims were infringed. Instead, they argue that the language in the franchise agreement grants only a *nonexclusive* license. Specifically, Defendants point to language throughout the agreement that suggests that the license is nonexclusive rather than exclusive. Accordingly, this Court must first examine the nature of the license granted to MBH by ARH in order to determine whether the evidence shows that MBH does not have authority to enforce the copyrights in the first place. The standing to sue is, of course, a threshold issue. It is also an issue for the Court and does not present a question of fact for the jury to decide.

The relationship between ARH and MBH began with a "Franchise and Licensing Agreement" that was executed between ARH and both David W. Schenck and James B. Wolfe on September 29, 2006. Franchise & License Agreement 5, ECF No. 85-1. As a result of the agreement, Schenck and Wolfe jointly became the exclusive franchisee in Horry County. On February 6, 2007, Schenck and Wolfe, with the consent of ARH, assigned all of their rights under the franchise agreement to MBH. Assignment & Assumption of Franchise & License Agreement, ECF No. 101-4. Therefore, based on the evidence in the record, the Court finds no genuine dispute

6

that MBH was the exclusive ARH franchisee in Horry County when the infringement giving rise to this action occurred. Despite MBH's *territorial* exclusivity, however, Defendants argue that the language of the agreement shows that ARH maintains ownership in the copyrights at issue and is thus the only party that has the right to bring this copyright infringement claim.

The pertinent language of the agreement between ARH and MBH begins as follows:

> We [(ARH)] are the sole and exclusive owner of copyrighted materials such as working drawings, related to our business. We are the owner of the Marks and Copyrights.
>
> . . .
>
> We grant you, and you accept upon the terms and conditions of this Agreement, the non-exclusive right, franchise and sub-license (the "Franchise") to operate a residential construction business using the Marks, the Copyrights . . .

Franchise & License Agreement 5, ECF No. 85-1. The agreement then defines several terms used throughout the agreement. The relevant definitions are as follows:

> **Territorial Restrictions**
> Your Franchise [(MBH)] may be used in the Territory defined in this Agreement [(Horry County)]. You agree not to build or sell Residential Products located outside of the Territory, or in any Community that we have designated for someone else. We may grant Franchises to anyone, or build Residential Products ourselves, within the Territory and/or anywhere else.
>
> . . .
>
> **Franchise**
> Means an entity that has the non-exclusive or exclusive right, franchise and sub-license to operate a Building Company using our Marks, Copyrights and our System for the construction and sale of Residential Products.

*Id.* at 6, 8. Section five of the agreement proceeds to explain the relationship between the parties as it relates to ARH's intellectual property. The parties agreed to the following:

> We own, use, promote and license the Marks and Copyrights. . . . We grant to a Franchise the right to own and operated a Building Company offering the products and services we authorize and approve, utilizing the Marks, Copyrights, and the System.
>
> . . .
>
> . . . you acknowledge and agree that your usage of the Marks, Copyrights, and System and any goodwill established by such use will be exclusively for our benefit. This Agreement does not confer any goodwill or other interests in the Marks, Copyrights, or System upon you (other than the right to operate your Franchise in compliance with this Agreement).
>
> . . .
>
> You recognize that we will grant other franchisees the right to use the Plans and the Copyrights as well.

*Id.* at 18–20.  Finally, the parties included supplemental agreements in the contract that, due to their designation as "supplemental," appear to go beyond the language of ARH's standard franchise agreements.  The Court notes one agreement that gives MBH "Exclusive Franchise Status."

> 34.2 The following provisions modify the Agreement to provide for territory exclusivity as long as certain conditions are met.
>
> **a. <u>Exclusive Franchise Status</u>**
> Subject to the terms and conditions contained in this Section, and notwithstanding the other provisions of the Franchise Agreement, we agree to not grant franchises the right to construct and sell Residential Product within the Franchise Territory ("Exclusive Franchise Status").  For purposes of this Section, as of the Effective Date, you are accorded Exclusive Franchise Status.

*Id.* at 46.

The Copyright Act ("the Act"), which creates the cause of action to enforce a holder's copyright, provides that "the legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b); *see also* 17 U.S.C. § 101 (" 'Copyright owner', with

8

respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right.").  Those exclusive rights are enumerated in the Act as the following rights:

> **(1)** to reproduce the copyrighted work in copies or phonorecords;
>
> **(2)** to prepare derivative works based upon the copyrighted work;
>
> **(3)** to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> **(4)** in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
>
> **(5)** in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
>
> **(6)** in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.  Ownership of these exclusive rights, moreover, may be transferred by way of "an assignment, mortgage, *exclusive license*, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, *but not including a nonexclusive license*." 17 U.S.C. § 101 (emphasis added).

After a review of the franchise agreement, the Court finds that ARH has granted an exclusive license to MBH to construct and sell homes using ARH's copyrighted architectural works, including the plans at issue.  In *Hubbard Broadcasting, Inc. v. Southern Satellite Systems, Inc.*, a district court found that the plaintiff owned an exclusive right after interpreting the license at issue to contain both "a granting provision and an exclusivity provision." 593 F. Supp. 808, 810 (D. Minn. 1984).  There, the agreement between the original copyright owner and the plaintiff had both

a provision granting the licenses and a provision that the plaintiff had "the exclusive right to transmit the works to television (TV) viewers in [the plaintiff's] broadcast areas." *Id.* The defendant argued that the license did not constitute a transfer of ownership of any exclusive rights. The court, however, disagreed and found the plaintiff was the owner of the exclusive rights. Specifically, the court held "that the granting and exclusivity provisions construed together give plaintiff exclusive rights to the works in particular geographic areas." *Id.* at 811.

Here, there is no dispute that ARH conveyed to MBH a license to use its designs in Horry County. While the language of the franchise agreement generally describes the license as non-exclusive, the parties, in their supplemental agreement noted above, "modif[ied]" the "Franchise and Licensing Agreement" "to provide for territory exclusivity." Given the grant of a license to MBH and the provision granting it territorial exclusivity in Horry County, the Court finds the agreement cannot be reasonably interpreted to permit others, including ARH, to use ARH's architectural works in the territory for the purpose of constructing and selling homes. The license is, therefore, exclusive, indicating a transfer of ownership of those rights under § 101. Accordingly, in light of *Hubbard Broadcasting*, the Court finds Defendants have failed to show that MBH lacks standing under § 501(b) to enforce the exclusive rights granted to them in Horry County.[3]

---

[3] At the hearing, the Chambers raised the concern that a finding that MBH had standing to enforce the relevant copyrights would expose them to the possibility that ARH could bring an enforcement action alleging the same copyright infringement. They point to the language in the franchise agreement that shows ARH maintains its ownership in its intellectual property. The Court, however, notes that standing to sue (and to protect a right) is derivative of ownership in one of the exclusive rights enumerated in the Act. Again, the granting of an exclusive license amounts to a transfer of ownership under the Act. *See* 17 U.S.C. § 101. Thus, as a corollary to this Court's ruling, ARH would not have standing to bring a similar action in Horry County as long as MBH holds its exclusive license. The Court notes this result finds its support in both the law and common sense. Indeed, as the exclusive licensee in Horry County, MBH has the most to lose from an infringement in that territory.

### III.    Infringement

In light of MBH's exclusive license to use the ARH plans at issue, the Court must address whether MBH has shown a prima facie case of copyright infringement.  "To establish a claim for copyright infringement, a plaintiff must prove that it owned a valid copyright and that the defendant copied the original elements of that copyright." *Lyons P'ship v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001).  "When the plaintiff possesses no direct evidence that the defendant copied its protected work, it may create a presumption of copying by indirect evidence establishing that the defendant had access to the copyrighted work and that the defendant's work is 'substantially similar' to the protected material." *Universal Furniture Intern., Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 435 (4th Cir. 2010) (quoting *Lyons P'ship,* 243 F.3d at 801). "Substantial similarity is a two-pronged test." *Id.*  "The plaintiff must show that the two works are (1) extrinsically similar because they contain substantially similar ideas that are subject to copyright protection and (2) intrinsically similar in the sense that they express those ideas in a substantially similar manner from the perspective of the intended audience of the work." *Id.*  The substantial similarity analysis in the context of architectural works was recently discussed and clarified by the Fourth Circuit in an unpublished opinion, *Charles W. Ross Builder, Inc. v. Olsen Fine Home Building, LLC*, 496 F. App'x 314 (4th Cir. 2012).

### a.  Access

The Chambers (and Wall Tec to a slight extent) raise arguments to challenge MBH's assertion that they had access to the ARH designs.  Indeed, "it must be reasonably possible that the paths of the infringer and the infringed work crossed." *Towler v. Sayles*, 76 F.3d 579, 582 (4th Cir. 1996).  The Chambers contend that MBH "relies on speculation" and that the evidence shows "nothing more than an assertion of a possibility of access" to the ARH plans. Wall Tec's argument,

on the other hand, relates more to its *knowledge* of whether the plans designed by Palmetto and provided to Wall Tec were copies.[4]   That argument is addressed more in detail below, where the Court analyzes Wall Tech's innocent builder defense.  The Chambers, however, specifically argue that the plans at issue were emailed on April 22, 2011, and May 16, 2011—"after the Chambers had provided [Palmetto] the design they wanted."  They also contend that MBH's claim that they had access to an ARH catalogue provided by MBH after a visit to a model home is "speculation."  But MBH highlights in its response that the date the plans from Palmetto were finalized was June 14, 2011.  They then point to a May 16, 2011 email sent to the Chambers from Bob Newman, a salesman for MBH, that attached the plans for the three designs at issue. ECF No. 66-9, at 1.  The Court notes that this email creates a reasonable inference that the Chambers had access to the three ARH designs at issue before the finalization of the Palmetto design.  Moreover, MBH provides deposition testimony from Newman, who claimed to have also given the Chambers the designs "somewhere around . . . October of 2010." Depo. of Robert L. Newman, ECF 75-2, at 7.  Accordingly, the Court finds sufficient evidence to create a genuine dispute of fact that the Chambers had access to the ARH plans.

### b.  Substantial Similarity

In addition to evidence of access, a claim of copyright infringement requires evidence that the alleged copy is substantially similar to the copyrighted work.  The Chambers (and Wall Tec, again, more generally) argue in their motions that the Palmetto design is not substantially similar to

---

[4] At the hearing, Wall Tec argued for the first time that it was impossible for them to have access to the Anastasia plans, pointing to the fact that MBH's own complaint alleges that the copyrights were applied for on November 17, 2011, when the Chambers' home was already under construction.  There is, however, evidence in the record that the Anastasia floor plans were published to the Chambers before the Palmetto designs were finalized and before the construction of the home began.  Accordingly, the Court finds no basis to grant partial summary judgment as to this argument raised by Wall Tec.

12

the ARH designs at issue.  MBH, however, responds that there is a genuine issue of material fact as to whether the plans are substantially similar.  To support its argument, MBH cites the deposition testimony of its expert witness, Myles Glick, an architect who opined that the plans' protectable[5] features are substantially similar.  The Court must, therefore, consider both the extrinsic and the intrinsic similarities of the plans in light of the standard set forth in *Charles W. Ross Builder*.

Extrinsic similarity refers to the *ideas* of the architectural drawings.  "In conducting this objective inquiry, a court must consider whether the two works 'contain substantially similar ideas that are subject to copyright protection.' " *Charles W. Ross Builder*, 496 F. App'x at 318.  In addition to the plans themselves, MBH relies on the deposition of Glick to support the extrinsic similarity prong of the analysis.  Indeed, the Fourth Circuit noted that "expert testimony often may be helpful to a court's determination of extrinsic similarity." *Id.* at 319 (citations omitted).  Glick explained at his deposition that, while the plans are not identical, there are substantial similarities in massing, the special relationships between rooms, activity bays, floor plans, and bathroom and kitchen layouts.  He specifically noted these elements of the plans were "so similar that you could almost take the Palmetto plans and put the Rutenberg label on it, and it would be another model of the same family." Depo. of Myles I. Glick, ECF No. 76-4, at 44.  Moreover, he expressed his opinion with a reasonable degree of certainty. *Id.* at 36.  Therefore, the Court finds sufficient evidence exists to genuinely dispute the issue of extrinsic similarity.

*Intrinsic* similarity, on the other hand, is different concept.  Unlike the extrinsic similarity prong, the intrinsic similarity prong of the analysis "generally does not require the aid of expert

---

[5]  Congress intended to protect the "arrangement and composition of spaces and elements" in architectural works, in recognition of the fact that "creativity in architecture frequently takes the form of a selection, coordination, or arrangement of [non-protected] elements into an original, protectable whole." H.R. Rep. No. 101–735 (1990). Congress, however, did not intend to protect "individual standard features," such as "common windows, doors, and other staple building components." *Id.*

testimony." *Charles W. Ross Builder*, 496 F. App'x at 319. Under this second prong, a court must "look[] to the total concept and feel of the works, but only as seen through the eyes of the . . . intended audience of the plaintiff's work." *Id.* at 318 (internal quotation marks omitted). The Fourth Circuit, moreover, quoted a test crafted by Judge Learned Hand: "whether the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Id.* (internal quotation marks omitted). After a comparison of the plans with the ordinary observer in mind, the Court finds that a reasonable jury could find that the ordinary observer would regard the plans' aesthetic appeal as the same. Indeed, the Court is cognizant that copyright protection of architectural works is "thin"; however, the Court finds summary judgment on the issue of substantial similarity is inappropriate. *Cf. Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) (noting that a copyright for compilations is "thin"). Accordingly, MBH has proffered sufficient evidence that, when viewed in a light most favorable to MBH, supports MBH's claims of copyright infringement, and the Chambers' motion for summary judgment must be denied.

### IV.    Innocent Builder Defense

Having found that MBH has shown a prima facie case of copyright infringement, the Court must address Wall Tec's additional argument that it is an innocent builder. Again, Wall Tec contends that MBH "has provided no evidence to support its claim that Wall Tec . . . had reason to doubt that the plans presented to it was anything but original work." Along those same lines, Wall Tec claims that there is no evidence that it violated any standard of care in its use of the plans. Wall Tec essentially maintains that it cannot be liable for an infringement if the evidence cannot reasonably show that it knew or should have known that the Palmetto plans infringed on a copyright. In response, MBH argues that "a plaintiff in a copyright infringement case does not have

to prove that the infringement was intentional." Specifically, it relies on a recent holding from this district, *Sater Design Collection, Inc. v. Waccamaw Const., Inc.*, C/A No. 4:08–cv–4133, 2011 WL 666146 (D.S.C. Feb. 14, 2011).

The facts of *Sater Design* are strikingly similar to the evidence favoring MBH. There, a homeowner took the plaintiff's design and had it modified to the point where the plaintiff's moniker was removed and replaced with the moniker of the company that modified the design. For that reason, there was no evidence at summary judgment that the builder knew the plans were based on the plaintiff's copyrighted design. Moreover, the builder never inquired about the origin of the design. Despite these facts, however, the district court rejected the argument of the builder and held that "a builder constructing a house based on a copyrighted set of plans without permission from the copyright holder would arguably constitute conduct that causes in some meaningful way an infringement." *Id.* at *7. Because of the similarity between the cases, the reasoning from *Sater Design* is helpful in understanding this legal anomaly. That reasoning is as follows:

> Assuming that the Qwest plan infringed Sater's copyright, Waccamaw and Hostetler may have difficulty avoiding liability by asserting they did not know they were infringing Sater's copyright by using the Qwest design to build the Waterton residence. Case law establishes that knowledge or intent is not an element of copyright infringement. This principle has also been applied in the context of a builder who uses a copyrighted design. It is based on the idea that " 'as between two innocent parties (i.e., the copyright owner and the innocent infringer) it is the latter who should suffer since he, unlike the copyright owner, either has an opportunity to guard against the infringement by diligent inquiry, or at least the ability to guard against liability for infringement by an indemnity agreement from his supplier or by an 'errors and omissions' insurance policy.' " As the Fourth Circuit has noted, "[w]hile the Copyright Act does not require that the infringer know that he is infringing or that his conduct amount to a willful violation of the copyright owner's rights, it nonetheless requires *conduct* by a person who causes in some meaningful way an infringement."

*Id.* at *7 (citations omitted).

15

MBH relies solely on the reasoning in *Sater Design*, and Wall Tec did not submit a reply addressing it. The Court is therefore persuaded by *Sater Design* and the policies behind the Act, including the parallels between the architecture and publishing industries. Indeed, one of the leading treatises on copyright law observes that "[c]opyright would lose much of its value if third parties, such as publishers and producers, were insulated from liability because of their claimed innocence as to the culpability of the persons who supplied them with infringing materials." Nimmer on Copyright § 13.08[B][1]. Accordingly, the Court finds that MBH has produced sufficient evidence to show that Wall Tec's actions "cause[d] in some meaningful way an infringement." In light of this finding and those above, Wall Tec's motion for summary judgment must also be denied.

### MOTIONS TO EXCLUDE EXPERT TESTIMONY

The Court now turns to MBH's and the Chambers' motions to exclude testimony of expert witnesses. MBH's motion seeks the total exclusion of Wall Tec's expert witness, Edward Friend. MBH's Mot. to Exclude, ECF No. 65. The Chambers move to exclude part of the testimony of MBH's expert witness, Myles Glick. Chambers' Mot. to Exclude, ECF No. 67.

### I.    Applicable Law

All evidence must be relevant to be admissible. *See* Fed. R. Evid. 402 (stating that "[i]rrelevant evidence is not admissible"); Fed. R. Evid. 401 (defining relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action"). Relevance is thus a perquisite to the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) (noting that "[t]he Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the

16

task at hand"). A court, however, "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Rule 702 of the Federal Rules of Evidence further permits the admissibility of expert testimony if (1) it "will help the trier of fact to understand the evidence or to determine a fact in issue" and (1) it "is based upon sufficient facts or data," (2) it "is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Because "expert witnesses have the potential to be both powerful and quite misleading," courts must "ensure that any and all [expert] testimony . . . is not only relevant, but reliable." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citations omitted). "Rule 702 grants the district judge the discretionary authority . . . to determine reliability in light of the particular facts and circumstances of the particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999).

## II.    Edward Friend

MBH moves to exclude the testimony of Wall Tec's expert witness, Edward Friend, a builder. MBH argues that Friend should be excluded pursuant to Rules 702, 401, 402, and 403 of the Federal Rules of Evidence. Specifically, MBH points out that Friend, in his expert report, limits the scope of this testimony to Wall Tec's standard of care. MBH's Memo. in Supp. of Mot. to Exclude 4–7, ECF 65-1. To that end, Friend opines in his report the following:

- That "the builder would neither have constructive or actual knowledge as to where or how [the plans provided to Wall Tec by the Chambers] were developed."

- That he "truly do[es] not see how the builder of the subject home, could possibly have known where the ideas for this

> particular home plan came from or who, other than Palmetto
> Design Group, LLC could have produced the plans, including,
> the ideas for the plan, elevations, room arrangements or any
> other features about the plan."

Expert Report of Edward Friend, ECF No. 65-2, at 2–3. MBH adds that Friend gives no opinion

about the substantial similarity in his deposition testimony. MBH's Memo. in Supp. of Mot. to

Exclude 3–4, 7. MBH cites *Sater Designs* to support its argument that Friend's testimony is

irrelevant and unhelpful because "knowledge or intent is not an element of copyright infringement."

*Id.* at 5. Alternatively, MBH invokes Rule 403, arguing that the probative value of Friend's

opinions is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

misleading of the jury, undue delay, wasted time, and cumulative evidence. *Id.* at 7. It contends that

the testimony would "create sympathy for Wall Tec, and confuse the jury as to the applicable legal

standard in copyright cases." *Id.*

  In response, Wall Tec presents several reasons for offering Friend as an expert to testify.

Those reasons—all relating to what a builder would or should have known—are best summarized as

a block quote from Wall Tec's response:

> Wall Tec offers Mr. Friend to testify that a builder would not have
> access to the ARH plans, nor would a builder have knowledge as to
> where or how the Challenged Plans were developed. Mr. Friend's
> testimony is also offered to assist the trier of fact with determining
> factual issues as Monterey Bay's claim for copyright infringement
> against Wall Tec arises out of the construction of a custom home
> located in the Bluffs neighborhood based upon the Challenged
> Drawings owned by Palmetto Design Group, LLC. . . . Mr. Friend's
> specialized knowledge in the construction industry regarding the
> construction of custom homes in the local industry, including the
> Bluffs neighborhood, based upon customer supplied architectural
> plans, is necessary to assist the trier of fact with understanding the
> evidence, determining whether Wall Tec knew or should have known
> that the Challenged Plans allegedly contain copyright-protected
> material, determining whether the custom home constructed by Wall
> Tec is substantially similar to the ARH Plans, and determining
> whether the Defendants were practical partners.

18

Resp. to MBH's Mot. to Exclude 5–6, ECF No. 73.  Wall Tec anticipates that MBH, based on the allegations in its amended complaint, will attempt (1) to introduce evidence that Wall Tec had a duty to know the whether the Palmetto design infringed on the ARH designs and (2) to argue that Wall Tec knew or had reason to know of the infringement. *Id.*  Moreover, Wall Tec seeks to prove that it did not willfully infringe on the ARH plans. *Id.*  Accordingly, Wall Tec argues that Friend's testimony will be both relevant and helpful.

In light of *Sater Designs*, the Court finds that the opinions offered by Friend are irrelevant and unhelpful to the issue of *liability*. What Wall Tec knew or should have known is not relevant to whether it caused an infringement in some meaningful way.  Therefore, to the extent his opinions are offered on that issue, the Court grants MBH's motion. That is not to say, however, the Friend's testimony should be excluded altogether.  Indeed, the question of *damages* remains, and that question is one for the jury. *Feltner v. Columbia Pictures Television*, *Inc.,* 523 U.S. 340, 355 (1998).  MBH has not yet elected what form of damages it seeks under the Act, and those forms include the option of statutory damages, which may be enhanced or reduced depending on the culpability of a defendant.  While a finding that the infringement was committed willfully justifies an increase in an award of statutory damages, a finding that a defendant "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright" may support a reduction. 17 U.S.C. § 504(c)(2).  As long as MBH keeps the door open to the option of statutory damages, the Court finds Friend's expert testimony relevant—especially to whether Wall Tec "had no reason to believe" that its acts constituted an infringement.  Friend's specialized knowledge regarding the construction of homes in the same area as the Chambers' home would be helpful to

the trier of fact and not run afoul of Rule 403.  Accordingly, MBH's motion to exclude is granted in part and denied in part.[6]

### III.    Myles Glick

The Chambers move to exclude Myles Glick's testimony relating to the Chambers' access the ARH designs at issue.  As discussed above, Glick is MBH's expert witness, who is offered as an expert on the issue of substantial similarity.  During his deposition, however, Glick testified about the concept of access in the copyright infringement context.  The Chambers object to the opinion, arguing that "[a]ccess is not a complicated concept and a jury is able to decide whether the Chambers had access to the protected works without the assistance of Glick." Chambers' Mot. to Exclude 1.  In response, MBH represents that it "does not intend to offer Mr. Glick as an expert on whether the Chambers had access to the copyrighted plans at issue." Resp. to Chambers' Mot. to Exclude 2, ECF No. 78.   Instead, it contends, "Mr. Glick is being offered as an expert as to whether the Palmetto Design Group plans are substantially similar to the copyrighted plans at issue." *Id.*  MBH insists only that Glick should be allowed "to discuss facts that he has been made aware of through his review of the discovery in the case." *Id.*  Accordingly, the Chambers' motion to exclude is granted.  Glick shall be barred from testifying about conclusions and inferences drawn from the evidence regarding the Chambers' access to the copyrighted plans.

CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant Wall Tec, LLC's motion for summary judgment (ECF No. 64) is **DENIED**, Defendants Robert and Mary

---

[6] At the hearing, MBH suggested bifurcating the liability and damages portions of the trial to mitigate any prejudice that may be caused by Friend's testimony.  The Court is not inclined to grant such a remedy when a limiting instruction to the jury would suffice.  It would thus behoove the parties to submit a joint limiting instruction to the Court prior to trial if statutory damages remains on the table.

Chambers' motion for summary judgment (ECF No. 66) is **DENIED**, Defendants Robert and Mary Chambers' motion to exclude (ECF No. 67) is **GRANTED**, and Monterey Bay Homes, LLC's motion to exclude (ECF No. 65) is **GRANTED IN PART** and **DENIED IN PART**.

      **IT IS SO ORDERED.**

                                        s/ R. Bryan Harwell
                                        R. Bryan Harwell
                                        United States District Judge

March 31, 2014
Florence, South Carolina